IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01799-MEH

LUKE IRVIN CHRISCO,

    Plaintiff,

v.

DONALD GIBSON,

    Defendant.

**ORDER ON MOTION TO DISMISS**

**Michael E. Hegarty, United States Magistrate Judge.**

    Before the Court is Defendant Donald Gibson's Motion to Dismiss. ECF 70. Defendant seeks dismissal of Plaintiff Luke Chrisco's four remaining claims related to Defendant's alleged use of four-point restraints and involuntary administration of medication. Defendant argues these claims are barred by the two-year statute of limitations for § 1983 claims. For the reasons that follow, the Court agrees and grants Defendant's motion.

## **BACKGROUND**

**I.    Statement of Facts**

    The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Complaint (ECF 5), which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    At all times relevant to the remaining claims, Plaintiff was incarcerated at the San Carlos Correctional Facility ("SCCF") in the Colorado Department of Corrections ("CDOC"). Compl.,

ECF 5. On July 30, 2015, Plaintiff sprayed water out of his shower onto the floor of the unit. *Id.* ¶ 79. SCCF officials removed him from the shower and placed him in restraints. *Id.* ¶ 80. Plaintiff then took ten milligrams of Zyprexa at the request of SCCF staff. *Id.* ¶¶ 80–81. Captain Larimore accused Plaintiff of having "cheeked" his medication. *Id.* ¶ 82. As a result, a nurse administered an intramuscular injection of Halidol. *Id.* ¶ 83. This caused Plaintiff to suffer radial nerve pain and anxiety. *Id.* ¶ 84.

On July 31, 2015, Plaintiff was placed on a mental health watch ("MHW") and put in restraints. *Id.* ¶ 1. When Plaintiff complained that the restraints were too tight, various nurses and guards drafted false reports stating that he was being aggressive. *Id.* ¶¶ 4–5. As a result, Defendants placed Plaintiff on a table in "four-point restraints" from August 2, 2015 through August 4, 2015. *Id.* ¶¶ 5–6. Plaintiff was placed in these restraints pursuant to a CDOC policy that required staff to review the need for restraints after four hours, then again every twenty-four hours. *Id.* ¶¶ 30–33. However, in practice, SCCF medical staff assessed inmates only after twenty-four hours. *Id.* ¶ 33. Defendant finally removed the restraints after Plaintiff promised he would stop filing lawsuits and grievances. *Id.* ¶ 60.

## II. Procedural History

Although Plaintiff initiated this case on July 24, 2017 by filing a document titled "Notice," ECF 1,[1] he did not assert claims against Defendant Gibson (among other former Defendants) until he filed his Complaint on August 14, 2017. Compl., ECF 5. Relevant to the argument raised in the present motion, Plaintiff deposited his Complaint in the SCCF mail system on August 8, 2017.

---

[1] The Notice is titled, "Notice of Non Consent; Rejection of Offer; Notice of Intent; Termination of Employment" and is addressed to "Warden Bartlow, Siobahn Bartlow, CDOC Exec Director Richard Raemisch; Governor John Hickenlooper." ECF 1. Neither Defendant Gibson nor the claims alleged against him are mentioned in the document.

*Id.* at 29. Plaintiff alleges six causes of action, but only claims three, four, five, and six, all brought pursuant to 42 U.S.C. § 1983, pertain to Defendant Gibson. In his third cause of action, Plaintiff alleges an Eighth Amendment claim against Defendant for restraining him from July 31, 2015 through August 4, 2015. Id. ¶¶ 51–70. Plaintiff's fourth claim alleges a First Amendment violation and contends that Defendant placed him in restraints in retaliation for lawsuits he filed. Id. ¶¶ 72–78. Claim five alleges Defendant violated the Eighth Amendment by force-medicating Plaintiff on July 30, 2015. Id. ¶¶ 79–88. Plaintiff's sixth claim asserts Defendant violated the First Amendment by medicating him by force in retaliation for filing lawsuits. Id. ¶¶ 86–88.

Defendant did not appear in this case (through his counsel) until May 23, 2018, *after* the filing of the former Defendants' motion to dismiss Plaintiff's Complaint. ECF 44. This Court granted the motion on July 27, 2018, leaving Gibson as the sole remaining Defendant. ECF 53. On September 26, 2018, Plaintiff filed a "Stipulated Motion for an Administrative Stay Toward Settlement." ECF 54. This motion was granted and a stay imposed on October 5, 2018. ECF 55-57. On February 25, 2019, Defendant filed a status report advising that the CDOC had rejected Plaintiff's settlement proposals. ECF 63. On March 21, 2019, the Court ordered Defendant to file an answer or other response to the Complaint on or before April 4, 2019. ECF 68.

On April 4, 2019, Defendant filed the present motion arguing the applicable two-year statute of limitations bars Plaintiff's remaining claims. ECF 70. Plaintiff filed a response to the motion on April 17, 2019 asking the Court to equitably toll the statute of limitations. Resp., ECF 71. According to Plaintiff, he was prevented from timely finishing his complaint "due to being moved to another prison and deprived of his papers in the process until August 6, 2017." *Id.* at 1. Plaintiff asserts this removal and confiscation of legal materials constituted exceptional circumstances, which requires equitable tolling. Defendant replied to Plaintiff's response on May

1, 2019 emphasizing that Plaintiff has failed to meet his burden to invoke equitable tolling. ECF 72. Defendant states he did not commit any wrongful conduct preventing Plaintiff from asserting his claims in a timely manner, nor did exceptional circumstances prevent Plaintiff from filing the claims.

## **LEGAL STANDARDS**

### I. Fed. R. Civ. P. 12(b)(6)

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming,*

*LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. (citing Fed. R. Civ. P. 8(a)(2)) (internal quotation marks and brackets omitted).

## II.     Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, if a court "can reasonably read the

pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110).

## **ANALYSIS**

The applicable statute of limitations for § 1983 claims is determined by the law of the forum state. *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999); *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). Colorado law requires that a plaintiff file his § 1983 claim within two years of the cause of action accruing. *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006); *Mwangi v. Norman*, No. 16-cv-00002-CMA-NYW, 2016 WL 7223270, at *5 (D. Colo. Dec. 13, 2016) (citing Colo. Rev. Stat. § 13-80-102(1)(g)). A cause of action "accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1154 (10th Cir. 1998) (quoting *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993)).

As set forth above, the Complaint reflects that claims three, four, five, and six relate to Defendant's conduct between July 30 and August 4, 2015. Compl. ¶¶ 50-88, ECF 5. Thus, the statute of limitations required that Plaintiff assert these causes of action on or before August 4, 2017. It is undisputed that Plaintiff submitted the Complaint in this case to the SCCF prison mail system on August 8, 2017. ECF 5 at 29. Facially, then, Plaintiff's claims are untimely. In fact, Plaintiff does not dispute that he filed his claims outside the statute of limitations.

Instead, Plaintiff asks the Court to equitably toll the statutory period based on wrongful conduct and extraordinary circumstances. Resp., ECF 71. According to Plaintiff, he was

prevented from filing his claims because although he began drafting his Complaint on July 26, 2017, "he was removed from his cell by trickery and separated from all of his property and legal papers and transferred to another prison" on July 28, 2017. *Id.* ¶¶ 2-3. Plaintiff further contends that he "remained deprived of his papers and property until the evening of August 6, 201[7]." *Id.* ¶ 4.[2] He states that when he received his items on August 6, 2017, he "preceded [sic] to hastily draft by hand the remaining three claims in the Complaint." *Id.* ¶ 15.

State law governs whether to toll the limitations period. *Fratus*, 49 F.3d at 675. In Colorado, "[t]he doctrine of equitable tolling is limited to situations in which either the defendant's wrongful conduct prevented the plaintiff from asserting the claims in a timely manner or truly exceptional circumstances prevented the plaintiff from filing the claim despite diligent efforts." *Noel v. Hoover*, 12 P.3d 328, 330 (Colo. App. 2000). Colorado law places the burden of proof on the party asserting that tolling is proper. *Sharp Bros. Contracting Co. & Sanders Co., Inc. v. Westvaco Corp.*, 878 P.2d 38, 44 (Colo. App. 1994).

The Court finds Plaintiff does not carry his burden by asserting "wrongful conduct" as a basis for tolling the statute of limitations. To the extent Plaintiff argues that moving him to another prison constituted wrongful conduct, "the party asserting the statute as a defense must be the party engaging in conduct that would make the application of the statute inequitable." *Id.* Plaintiff does not contend that Defendant moved him to another prison or deprived him of his papers. Accordingly, tolling is not proper based on Defendant's conduct. *See Chrisco v. Raemisch*, 17-cv-01036-PAB-MEH, 2018 WL 1517023, at *2 (D. Colo. Mar. 27, 2018) ("Even construing

---

[2]Plaintiff refers repeatedly to dates in 2018, but since he makes essentially the same argument in response to the motion to dismiss filed by the former Defendants and refers therein to July and August 2017 (ECF 42), the Court finds his references to 2018 in the present response to be typographical errors.

plaintiff's response liberally to allege that the CDOC engaged in wrongful conduct, plaintiff has not argued that any one of the named defendants impeded the timely filing of his complaint.").

Notwithstanding this finding, Plaintiff may still be entitled to equitable tolling if "truly exceptional circumstances prevented [him] from filing" his claims. *Noel*, 12 P.3d at 330. Equitable tolling applies only in "rare and exceptional circumstances." *Fischer v. Gibson*, 262 F.3d 1135, 1143 (10th Cir. 2001). To prevail on an "extraordinary circumstances" theory, a plaintiff must show that he made "diligent efforts" to pursue his claims. *Noel*, 12 P.3d at 330 ("The extraordinary circumstances basis for equitable tolling requires the plaintiff to make a good faith effort to pursue any claims."). Courts have generally required a plaintiff alleging denial of access to legal materials to demonstrate diligence by "making multiple requests that his documents be returned before the deadline" or by "attempting to timely file in spite of the lack of access." *United States v. Oakes*, 445 F. App'x. 88, 94 (10th Cir. 2011).

In the present case, Plaintiff fails to demonstrate that he diligently pursued his claims within the statutory period. *See Gognat v. Ellsworth*, 224 P.3d 1039, 1049 (Colo. App. 2009) (stating that plaintiff bears the burden of showing that equitable tolling should apply). Plaintiff relies on *United States v. Gabaldon*, which involved prison officials confiscating all of the plaintiff's legal materials before the filing deadline, resulting in the plaintiff's filing of an untimely lawsuit. 522 F.3d 1121, 1124 (10th Cir. 2008). The court in *Gabaldon* granted equitable tolling of the plaintiff's claims. However, unlike the Plaintiff here, the plaintiff in *Gabaldon* detailed the numerous actions he took in preparing his materials between May 2005 and January 2006, with knowledge that the statutory deadline would pass in March 2006. *Id.* at 1126. Additionally, the prison officials in *Gabaldon* confiscated all of plaintiff's legal materials six weeks prior to his filing. During these six weeks, the plaintiff made numerous requests for the return of his materials. *Id.* at 1127.

8

Gabaldon detailed the multiple actions he took in preparing his materials prior to the deadline, and he "apparently had documents that were close to being fileable." *Id.* at 1126.

Conversely, in the present case, Plaintiff (who, unlike other pro se plaintiffs, has filed numerous cases in this Court since 2016) began drafting his complaint ten days prior to the statutory deadline. While waiting to file until late in the limitations period does not necessarily constitute a lack of due diligence, "[e]xtraordinary circumstances cannot 'prevent' a petitioner from filing on time if, prior to the occurrence of those circumstances, the petitioner has been so neglectful in the preparation of his petition that even in the absence of the extraordinary circumstances, a reasonable person in the petitioner's situation would have been unable to file in the time remaining within the limitations period." *Valverde v. Stinson*, 224 F.3d 129, 136 (2nd Cir. 2000) (finding equitable tolling where the plaintiff, in a sworn affirmation, attested that he first learned of the statutory time limit late in the period, then alleged that a corrections officer wrongfully confiscated his petition). Here, Plaintiff fails to demonstrate he exercised due diligence when he began drafting his complaint—which he describes as "was very fact intensive, included multiple defendants[,] and relied on incident reports, grievances, logs, Plaintiff's prison journal and other documents"—only ten days prior to the statute of limitations deadline. Plaintiff fails to explain why he did not prepare the complaint sooner or whether he was prevented from doing so. Furthermore, Plaintiff does not allege he attempted to hastily file a complaint that would avoid the running of the statutory period. *See Chrisco*, 2018 WL 1517023, at *3 (plaintiff "failed to exercise diligence when, as the statutory deadline approached, he did not (a) attempt to have the library copy his complaint more quickly or ask the library to return it to him without making a copy, or (b) file a hastily-prepared complaint to avoid the running of the statute of limitations.").

In his attempt to demonstrate diligence, Plaintiff argues that he spoke with an intake officer and wrote a letter to the warden of the facility to which he was transferred complaining that his legal papers had been confiscated; he was instructed by a "Captain Fustini" to "write a kite to the property sergeant" then wait for his papers to arrive "probably … in a week's time." Resp. ¶¶8-11. Plaintiff contends that after receiving this instruction, he elected to write the kite "and wait for his property to arrive." *Id.* ¶ 14. There is no indication that Plaintiff did anything further toward meeting the statute of limitations. Because Plaintiff fails to demonstrate either extraordinary circumstances or wrongful conduct, the Court must conclude that equitable tolling is not warranted here.

## **CONCLUSION**

In the absence of equitable tolling, Plaintiff's claims are barred by the two-year statute of limitations. Accordingly, this Court **grants** Defendant's Motion to Dismiss [filed April 4, 2019: ECF 70] as set forth herein. The Clerk of the Court shall close this case.

SO ORDERED.

Dated and entered at Denver, Colorado this 9th day of August, 2019.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge